UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| SUGAR CREEK WIND, LLC, | ) | |
| | ) | |
| PLAINTIFF, | ) | Case No. 1:19-cv-4761 |
| | ) | |
| V. | ) | |
| | ) | |
| MONTGOMERY COUNTY, INDIANA, | ) | |
| MONTGOMERY COUNTY BOARD | ) | |
| OF COMMISSIONERS, | ) | |
| JAMES FULWIDER, DANIEL GUARD | ) | |
| AND JOHN FREY, | ) | |
| | ) | |
| DEFENDANTS. | ) | |

**COMPLAINT FOR DECLARATORY AND
INJUNCTIVE RELIEF, AND FOR DAMAGES**

Plaintiff Sugar Creek Wind, LLC ("Sugar Creek"), by counsel, for its Complaint for

Declaratory and Injunctive Relief, and for Damages, against defendants Montgomery County,

Indiana ("Montgomery County" or the "County"), Montgomery County Board of

Commissioners, James Fulwider, Daniel Guard, and John Fry (collectively, "Defendants"),

respectfully states and alleges as follows:

**NATURE OF ACTION**

1.      Over five years ago, in September 2013, Sugar Creek and Montgomery County

entered into an Economic Development Agreement (the "Agreement") and other agreements to

facilitate the development and placement of a wind-powered electric generation facility in

Montgomery County (the "Project").  The County committed in that Agreement to use its best

efforts to facilitate development of the Project.  In reliance on that Agreement, and on the

County's then-extant land use regulation governing wind energy conversion systems and its

designation of the Project area as an Economic Revitalization Area, Sugar Creek undertook

- 1 -

extensive development efforts costing millions of dollars, including leasing thousands of acres of land, completing environmental studies and reports, negotiating agreements for the supply, operation, and maintenance of the Project, and initiating the financing process.

2.      But in September 2018, Montgomery County reneged on the deal.  Having done an about-face in deciding to block the Project, the County adopted Ordinance 2018–26, which drastically changes the rules for issuing building permits by requiring the underlying county agreements — including the Economic Development Agreement — to be ***less than two years old***.  Because Sugar Creek's agreements with the County date back to 2013, this retroactive ordinance, if applied to the Project as written, makes it impossible for Sugar Creek to obtain a building permit for the Project and continue the Project.  Further, in February 2019, the County adopted Resolution 2019–05, which purported to rescind the Economic Revitalization Area designation that had been previously established for the area in which the Project is to be constructed, with devastating financial consequences for the Project.  After Sugar Creek sent a default letter putting the County and its Commissioners on notice of these breaches, the County took further action to destroy the Project by adopting Ordinances 2019-14 and 2019-16, which adopted new zoning requirements severely restricting Sugar Creek's ability to construct wind energy conversion systems.  Through these actions, the County has purposefully singled out, targeted, and discriminated against Sugar Creek.

3.      Montgomery County's breaches of the Economic Development Agreement, and other wrongful conduct reflecting an arbitrary desire to thwart the Project, threaten to undercut Sugar Creek's work and bring years of development to a halt.  Indeed, the delays resulting from the County's actions have already had an adverse impact on the federal production tax credit applicable to the Project, resulting in tens of millions of dollars of injury to Sugar Creek.   These

retroactive ordinances and resolutions improperly single out Sugar Creek, deprive Sugar Creek of its vested rights, and violate Sugar Creek's rights under the Indiana and Federal Constitutions.

4.      By this action, Sugar Creek seeks declaratory and injunctive relief requiring Montgomery County to meet its obligations under the Agreement and comply with Sugar Creek's vested rights, as well as monetary relief for Montgomery County's breaches and other wrongful conduct.

## PARTIES

5.      Plaintiff Sugar Creek Wind, LLC is a limited liability company organized under the laws of Delaware.  Sugar Creek's Members are Akuo Energy USA, Inc. and Stewardship Wind LLC.  Akuo Energy USA, Inc. is a corporation incorporated under the laws of the state of Delaware with its principal place of business in Illinois, and is a citizen of those two states. Stewardship Wind LLC is a limited liability company organized under the laws of Illinois and its members, Joy Kauffman and Matt Kauffman, are domiciled in, and citizens of, Illinois.

6.      Defendant Montgomery County, Indiana is a municipal entity organized under the laws of the State of Indiana with its principal place of business in Montgomery County, Indiana.

7.      Defendant The Montgomery County Board of Commissioners is a municipal entity organized under the laws of Indiana with its principal place of business in Montgomery County, Indiana.

8.      Defendant James Fulwider ("Fulwider") is a Commissioner on the Montgomery County Board of Commissioners who is domiciled in, and a citizen of, Indiana, and is sued in his official capacity.

9.       Defendant Daniel Guard ("Guard") is a Commissioner on the Montgomery County Board of Commissioners who is domiciled in, and a citizen of, Indiana, and is sued in his official capacity.

10.     Defendant John Frey ("Frey") is a Commissioner on the Montgomery County Board of Commissioners who is domiciled in, and a citizen of, Indiana, and is sued in his official capacity.

## JURISDICTION AND VENUE

11.     This Court has jurisdiction over this action based on diversity of citizenship, given that Plaintiff and Defendants are citizens of different states and the amount in controversy exceeds $75,000, exclusive of interests and costs, pursuant to 28 U.S.C. § 1332.

12.     In addition, federal question jurisdiction exists under 28 U.S.C. § 1331 because this action alleges violations of the U.S. Constitution, specifically, the Takings Clause, U.S. Const. amend. V, the Contracts Clause, U.S. Const. art. I, 10, cl.1, and the Due Process Clause, U.S. Const. amend. 14, § 1.

13.     This Court has personal jurisdiction over Defendants because they reside in this judicial district and this action arises from their conduct in this judicial district.

14.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendants reside in this judicial district, a substantial part of the events or omissions giving rise to this claim occurred in this district, and a substantial part of property that is the subject of the action is situated in this district.

## FACTS COMMON TO ALL CLAIMS FOR RELIEF

**A.      Montgomery County's Wind Energy Conversion System Permitting Requirements and Economic Revitalization Area Designation**

15.     Sugar Creek is a wholly owned subsidiary of Akuo Energy USA, Inc., which develops, finances, constructs, owns, and operates wind farms in North America.  Sugar Creek has, since 2013, been developing a wind-powered electric generation facility in Montgomery County, Indiana (the "Project").

16.     Chapter 155 of the Montgomery County Code establishes land use regulation governing wind energy conversion systems in the County.  Section 155.10 of the Code provides requirements and procedures for issuance of building permits for wind energy conversion systems.  Section 155.10 requires that prior to issuance of a permit, the applicant must have entered into three agreements with the Board of Commissioners — an Economic Development Agreement, a Road Use Agreement, and a Decommissioning Agreement.  When enacted, and when Sugar Creek negotiated the requisite contracts with Montgomery County (as detailed below), Section 155.10 did not impose any limit on the age of agreements which qualify for the issuance of permits.

17.     In 2013, Sugar Creek and the County engaged in negotiations to enter into agreements for development and construction of a wind-powered electric generating facility in the underdeveloped areas of the County.  As part of these negotiations, the County proposed to provide property tax abatements to incentivize Sugar Creek to enter into the Project.

18.     In Indiana, tax abatement is available for development of real estate that has been designated as an Economic Revitalization Area in accordance with Indiana law.

19.     To encourage Sugar Creek's pursuit of the Project by clearing the path to tax abatement, on September 3, 2013, the Montgomery County Council adopted Resolution 2013–09, a true and correct copy of which is annexed hereto as Exhibit 1.  Resolution 2013-09 designated the Development Area of the Project — Sugar Creek and Madison Townships (in Montgomery County) — as Economic Revitalization Areas.  In adopting this Resolution, the County emphasized the distressed nature of the area, the need for economic development such as the Project, and the interests of Sugar Creek:

> [A]fter studying these areas . . . the Council now finds that these areas
> have become undesirable for, or impossible of, normal development and

occupancy because of a lack of development, cessation of growth, deterioration of improvements or character of occupancy, age, obsolescence, substandard buildings, and other factors which have impaired values or prevented normal development of property or use of property . . . the Council further finds that these areas would benefit from economic development and revitalization facilitated by real property and personal property tax abatements which would be available if the areas are designated as economic revitalization areas . . . the Council further finds that the interest of Sugar Creek Wind, LLC is indicative of the substantial economic development which could be attracted to these areas if such a designation is approved.

**B.    The Parties Enter Into an Economic Development Agreement, a Road Use Agreement, and a Decommissioning Agreement**

20.    A few days thereafter, on September 9, 2013, relying on the Economic Revitalization Area designation, Sugar Creek entered into the three required agreements with Montgomery County:  (1) an Economic Development Agreement ("Economic Development Agreement"), a true and correct copy of which is annexed hereto as Exhibit 2; (2) a County Road Use and Drainage Repair Agreement ("Road Use Agreement"), a true and correct copy of which is annexed hereto as Exhibit 3; and (3) a Decommissioning Agreement ("Decommissioning Agreement"), a true and correct copy of which is annexed hereto as Exhibit 4.  Each of these agreements was executed on behalf of the County by the members of the Montgomery County Board of Commissioners at that time, including Defendant Fulwider.

**1.    The Economic Development Agreement**

21.    The Economic Development Agreement's Recitals acknowledged that Sugar Creek was contemplating the development and construction in the County of a wind-powered electric generating facility with a maximum rated capacity of approximately 250 megawatts. The Project would involve the installation of wind turbines and the associated underground electrical collection system, electrical substation, permanent meteorological towers, operation and maintenance facilities, access roads, lay-down and staging yards, construction and related

facilities, equipment, and related improvements in the Development Area. Its completion was projected to result in approximately $157,000,000 in local spending and the creation of approximately 975 temporary and 61 permanent jobs. The Recitals emphasized the County's (and Sugar Creek's) desire to foster economic development and the creation of jobs, particularly in the Development Area, reported the County's determination that the Project's completion "is in the best interests of the citizens of the County," and concluded that the parties had consequently decided to "enter into this Agreement to provide for the development of the Project pursuant to the terms set forth herein." Ex. 2 at 1, 2.

22.     As the County further recognized in the Sugar Creek Wind Project Economic Development Plan annexed as Exhibit C to the Economic Development Agreement, the Project has the potential to provide mutually beneficial economic gains to both the developers and the community through various financial incentives and local supports. The Project aims to promote a sustainable and diverse local economy while maintaining a healthy environment and high quality of life for citizens. Development of the Project would contribute to diversification of the local economic foundation and provide a new source of revenue for the community, while simultaneously allowing the continued use of almost all of the required land for other business purposes common to the County, such as agriculture. Recognizing the benefits of the Project, the County supported the Project through road use and local permitting and approval assistance before entering into the Economic Development Agreement.

23.     The Agreement imposes obligations on both parties to pursue and promote completion of the Project. Most notably, Section 2.01 provides as follows:

> **The parties agree**, subject to further proceedings by law, **to take such actions**, including but not limited to the execution and delivery of such documents, instruments, petitions and certifications (and*, **in the case of County, holding certain public hearings and using their best efforts to**

- 7 -

> *the fullest extent permitted by law to adopt certain ordinances and resolutions), as may be necessary or appropriate, from time to time, to carry out the terms, provisions, and intent of this Agreement and to aid and assist each other in carrying out said terms, provisions, and intent.* (Emphasis added).

24.     Moreover, the County represented and warranted as follows in Section 6.01 of the Agreement:

> *County represents and warrants* that it has taken or *shall use its best efforts as permitted by law to take* (subject to Company's performance of its agreements and obligations hereunder) *such action(s) as may be required and necessary to enable County* to execute this Agreement and *to carry out fully and perform the terms, covenants, duties and obligations on its part to be kept and performed as provided by the terms and provisions thereof.* (Emphasis added).

25.     The County also represented and warranted in Section 6.02 that it had "full constitutional and lawful right, power and authority, under currently applicable law, to execute and deliver and perform its obligations under this Agreement."

26.     Pursuant to Section 3.01 of the Economic Development Agreement, Sugar Creek is obligated to use commercially reasonable efforts to complete construction and equipping of the Project.  As part of this obligation, pursuant to Section 5.04, Sugar Creek must procure a building permit from the County as provided in the Montgomery County Land Use Law.

27.     In Section 3.03, the County agreed to use its best efforts permitted by law to approve tax abatement for Sugar Creek's investment in the Project, as further detailed in the Economic Development Agreement.

28.     Sugar Creek, in turn, agreed in Section 4.01 that, in lieu of the abated taxes, it would pay targeted annual Economic Development Payments to the County in an amount commensurate with the final Project capacity.

29.     Further, as referenced in Section 4.02, Sugar Creek entered into a Gift Agreement ("Gift Agreement") with Ivy Tech Community College ("ITCC"), which is annexed as Exhibit F

to the Economic Development Agreement (Ex. 2), with the intent of directly promoting the creation of a skilled labor force within the County through an annual scholarship and endowment made to support the ITCC Energy Technology Degree curriculum program for the operating life of the Project.  In order to help support this program, Sugar Creek agreed to provide (1) an annual scholarship ranging from $3,000 to $10,000 to a County resident in the program; and (2) an initial $10,000 endowment with an annual endowment ranging from $3,000 to $10,000 for each subsequent year to ITCC for a period of five years, after which it would jointly assess future contributions with ITCC.

### 2. The Road Use Agreement

30.     Under the Road Use Agreement (Ex. 3), the County agreed to allow Sugar Creek to use certain County roads and complete certain modifications to the County drainage system necessary to accommodate the Project.  Sugar Creek, in turn, agreed to assume financial responsibility for certain road improvements, road and sign maintenance, and repairs.

### 3. The Decommissioning Agreement

31.     The Decommissioning Agreement (Ex. 4) established requirements and procedures governing the decommissioning of wind turbines and other components upon termination of the Project's operations, specifying that such decommissioning must occur within twelve months after Project activity terminates.  Most notably, the Decommissioning Agreement requires Sugar Creek to provide financial assurances that the costs of such decommissioning will be provided for.  Specifically, Section 4(a) provides that Sugar Creek "shall cause to be delivered to the County, before issuance of any building permits for the Project, a Surety Bond" which "shall be in the amount of $15,000.00 per turbine beginning by the start of construction and shall be maintained for the duration of the Wind Project, until the Project Decommissioning Works are complete."  This figure was calculated in accordance with Montgomery County Code Section

155.15(F), which then provided that the amount of the assurance was to be determined by obtaining an amount at least equal to 125% of the amount of demolition and removal contractor cost estimate, then deducting from that amount the estimated salvage value of the decommissioned components.  Since the Project is expected to encompass 35-40 turbines, the Decommissioning Agreement would ultimately require a Surety Bond in the amount of $525,000 to $600,000.  Section 4(b) further provided that the required amount is to be reevaluated every five years by obtaining updated Decommissioning Cost Estimates, and then deducting the salvage value from that estimate.

### C.   The County Adopts a Second Resolution to Finalize Tax Abatement on the Project

32.   On October 1, 2013, pursuant to Section 3.03 of the Economic Development Agreement, the Montgomery County Council adopted a resolution approving tax abatement for the Project: Resolution 2013–12, a true and correct copy of which is annexed hereto as Exhibit 5, provided a 10-year tax abatement for the Project.  Resolution 2013-12 noted the benefits that were to flow to the County through the Project, including Sugar Creek's intended investment of approximately $175,000,000 and employment of 27 full-time employees with estimated salaries totaling $1.3 million.  Considering these and other benefits, by this Resolution, the County granted a 10-year tax abatement to Sugar Creek beginning in 2014.

### D.   Sugar Creek Invests Significant Amounts in Reliance on the Agreements and Ordinances

33.   In reliance on these agreements and ordinances, Sugar Creek has spent over $3 million in "hard," out-of-pocket costs to pursue development of the Project, and incurred "soft" costs of a similar magnitude in efforts devoted by its officers and employees.

**E.    The County Breaches the Economic Development
Agreement Through Adoption of Ordinances That
<u>Undermine and Threaten Advancement of the Project</u>**

34.    Recent actions taken by Montgomery County undermine and threaten further

advancement of the Project, violate Sugar Creek's vested rights, breach (and, indeed, vitiate) the

Economic Development Agreement, and violate the United States and Indiana Constitutions.

35.    Under the Economic Development Agreement, Montgomery County was

obligated to use its "best efforts" and, "to the fullest extent permitted by law" adopt "ordinances

and resolutions" to carry out the purpose of that Agreement, the development of the Project.

But, on September 10, 2018, in direct contravention of that obligation, the Montgomery County

Board of Commissioners adopted Ordinance 2018–26, a true and correct copy of which is

annexed hereto as Exhibit 6, which purports to dramatically change the rules for issuing building

permits for Wind Energy Conversion Systems.  As discussed above, before this Ordinance,

parties developing and producing wind-generated electricity in the County were required to enter

into three agreements with the County — an Economic Development Agreement, a Road Use

Agreement, and a Decommissioning Agreement — as Sugar Creek did with the County in 2013.

Ordinance 2018-26, however, imposes a new requirement that none of the three required

agreements be ***more than two years old*** at the time of application for a building permit.

36.    Ordinance 2018-26, if permitted to be applied to Sugar Creek, would effectively

kill the Project, given that the Project has not yet reached the stage where a building permit is

necessary and Sugar Creek consequently has not yet applied for such a permit, while its three

agreements with the County were executed more than two years ago.  Indeed, if Ordinance 2018-

26 is enforceable, it would eviscerate the Economic Development Agreement by making it

impossible for Sugar Creek to develop the Project.  Further, the Ordinance directly targets this

Project and this Project alone, given that, on information and belief, no other wind-generated

electricity projects in the County without building permits have such Agreements that are over two years old.

37.      The Ordinance was purportedly passed to "protect the citizens of Montgomery County" because "material terms and conditions of these agreements may change over time" and "the passage of time, changing economic conditions, new economic development . . . and other changes may make the terms and conditions unreasonable."  But the "material terms and conditions" of the Economic Development Agreement have not changed.  What has changed instead is the County's political stance on the Project.  The County cannot retroactively change the conditions under which Sugar Creek can obtain a building permit years after the Economic Development Agreement was signed, and after Sugar Creek expended substantial resources in reliance on the previously governing regulations and requirements.  As the County was well aware, the purpose of the Agreement was to provide a stable foundation on which Sugar Creek could rely on spending millions of dollars developing the Project while the County could realize economic revitalization, investment, and new jobs.

38.      The County took further steps to block the Sugar Creek Project, and in further violation of the County's obligations and Sugar Creek's vested rights on February 7, 2019, when the Montgomery County Council adopted Resolution 2019–05, a true and correct copy of which is annexed hereto as Exhibit 7.  This Resolution purports to rescind the Economic Revitalization Area designation for the Development Area.  If the rescission of this designation through Resolution 2013-09 were permitted to be applied retroactively to the Project, it would have devastating financial consequences for the Project, in that the tax abatement afforded to Sugar Creek would be eliminated.  As stated above, Sugar Creek relied on the tax abatement

incentives: (1) when it entered into the agreement for the Project and (2) thereafter when it spent millions of dollars to pursue development of the Project.

39.     In addition, on May 13, 2019, the County adopted Ordinance 2019-13, which revises the provisions of Montgomery County Code Section 155.15(F) governing the financial assurance required to be provided for decommissioning wind energy conversion systems.  The revised provisions are more onerous than those in place when Sugar Creek entered into its agreements with the County, and, consequently, are more onerous than the requirements Sugar Creek agreed to in the Decommissioning Agreement.  In particular, the revised provisions increase the financial assurance developers must provide by eliminating the credit for the salvage value of the turbine which Section 155.15(F) previously included in calculating the amount required.  In addition, while Section 155.15 previously permitted the developer to provide financial assurance in the form of a surety bond, the revisions eliminate this option, and require that a letter of credit – a more expensive form of security – be provided instead.  The County to date has not indicated whether, notwithstanding the terms of the Decommissioning Agreement, it will seek to impose these more onerous financial assurance requirements on Sugar Creek.  Imposition of these new requirements would increase the amount of financial assurance Sugar Creek would be required to provide by approximately $3 million and require that it use a more burdensome and expensive vehicle, a letter of credit, to provide that assurance.

**F.     The County Responds to Sugar Creek's Notice of Default By Adopting
A Zoning Ordinance Designed To Destroy the Project**

40.     Pursuant to Section 7.03 of the Economic Development Agreement, on March 26, 2019, Sugar Creek sent a notice of default letter to Montgomery County, a true and correct copy of which is annexed hereto as Exhibit 8.  The default letter put the County and its Commissioners on notice of the breaches caused by the enactments set forth above, and demanded that Sugar

- 13 -

Creek and the Project be expressly exempted from the applicability of the new Ordinances and Resolution.  Sugar Creek provided thirty days from receipt of the notice to cure the defaults, and urged the County to act expeditiously to provide assurances that it would do so.

41.     Rather than respond to Sugar Creek's correspondence and honor its contractual commitments  — and recognizing that its prior efforts to squelch the Project were legally ineffective — in April 2019, the County took the further step of immediately fast-tracking a new zoning ordinance in another attempt to destroy the Project.

42.     Unbeknownst to Sugar Creek, the Montgomery County Board of Commissioners developed Ordinance 2019-14, a true and correct copy of which is annexed hereto as Exhibit 9, which was ultimately adopted on June 10, 2019.  Ordinance 2019-14 incorporates a "Zone Map" that divides the County into five zoning districts: Agricultural, Commercial, Industrial, Planned Unit Developments, and Residential.  Notably, wind turbines and wind energy conversion systems are not within the "permitted uses" of any such zoning district.  Instead, such wind systems are only permitted if a special exception is granted by the Board of Zoning Appeals, and even then they are only allowed in Industrial districts.  Moreover, wind systems must meet a lengthy list of new standards and requirements, including with respect to setbacks, noise levels, electrical components, aesthetics and lighting, signage, removal, climb prevention, waste management, utility interconnection, drainage repair, road use, sewage and water, and fire prevention.  Wind developers must also provide a "property value guarantee" to all residents and landowners within two miles of a wind turbine, and pay any difference in property value caused by the erection of such wind turbines if the property does not sell.  And prior to the construction of any wind system, wind developers must obtain four separate approvals with onerous application requirements: (1) an Application for a Special Exception from the Montgomery

County Board of Zoning Appeals; (2) a Request for Variance for any anticipated variances; (3) drainage approval; and (4) an Improvement Location Permit from the Zoning Administrator.  On June 24, 2019, Chapter 155 was amended through Ordinance 2019-16, a true and correct copy of which is annexed hereto as Exhibit 10, in order to conform to these new "wind-killer" provisions.

43.     Several newspaper reports make clear that these ordinances were passed by the County to impede development of the Project.  For example, in an April 11, 2019 article titled "Lawsuit Threat Pushes Zoning Bid," John Frey, Montgomery County Commissioner and President of the Plan Commission, was quoted as follows:  "***The threat of a lawsuit from the wind energy folks was the driver to initiate the immediate adoption of this ordinance***."  The article goes on to make clear that the so-called threat was Sugar Creek's March 23, 2019 default letter.

44.     Likewise, an April 25, 2019 article titled "No recommendation from Zoning Ordinance" contains the following observation:

> The revelation of the proposed zoning ordinance came a day after commissioners adopted the new comprehensive plan. And it was sparked after the county was threatened by Akuo Energy last month with a potential lawsuit. County attorney Dan Taylor wouldn't provide details on what grounds Akuo Energy has for taking legal action.

45.     While the County was developing and enacting this new zoning ordinance without Sugar Creek's knowledge, on April 22, 2019, Sugar Creek again wrote to the County pursuant to Section 7.03 of the Economic Development Agreement, this time providing notice of its election to proceed with mediation of this dispute and advising the County to propose mediators.  The parties negotiated dates and mediators, and ultimately attended mediation on August 20, 2019.

### G.     The County Refused to Cure and Mediation Failed, Necessitating This Lawsuit

46.     As Sugar Creek advised the County prior to, during, and after mediation, the County's recent enactments are legally ineffective against Sugar Creek and the Project for several reasons, including because: (1) at the times of their adoption, Sugar Creek had accrued vested development rights in the Project under Indiana law by virtue of its substantial investments in the Project, and its efforts to develop and complete the Project; (2) the County's adoption of the ordinances violate the express terms of the Economic Development Agreement; (3) the enactments unlawfully apply singularly to Sugar Creek and the Project, not the public at large; (4) the enactments cannot be made effective retroactively (as they purport to be); and (5) they violate federal and state constitutional contract clauses.  The passage of these new regulations substantially impedes the development of the Project, including its ability to obtain financing, and threatens severe irreparable injury to Sugar Creek and to the Project.

47.     Moreover, the County has not cooperated with Sugar Creek's efforts to resolve these issues by entering into new agreements with the County (the Economic Development Agreement, Road Use Agreement, and Decommissioning Agreement).  Instead, the County to date has been unwilling to respond to Sugar Creek on this issue, and its adoption of the recent zoning ordinance makes plain that it has no intention of complying with its contractual commitments.

48.     Indeed, even if it were now to renounce any effort to apply the new Ordinances and Resolution to Sugar Creek, the County's actions have already caused substantial injury to Sugar Creek.  As a result of the delays resulting from the County's obstruction of the Project, the federal production tax credit for which the Project is eligible will be substantially reduced, resulting in tens of millions of dollars in losses to Sugar Creek.

49.     Sugar Creek and the County attempted to resolve this dispute during mediation on August 20, 2019, and in subsequent exchanges.  However, these efforts have resulted in impasse, such that commencement of this action is now necessary.

**FIRST CAUSE OF ACTION**
**(Breach of Contract – Against Defendant Montgomery County)**

50.     Plaintiff incorporates and realleges the allegations in paragraphs 1 through 49 above.

51.     On September 9, 2013, Sugar Creek and the County entered into an Economic Development Agreement, which is a valid and enforceable contract.

52.     Sugar Creek has performed its obligations under the contract.  Indeed, the County has never suggested otherwise.

53.     The County failed to perform its part of the contract by not using its best efforts to carry out the terms, provisions, and intent of the Agreement and aid and assist Sugar Creek in carrying out said terms, provisions, and intent.  Indeed, the County breached the contract by adopting Ordinance 2018-26, which purports to dramatically change the rules for issuing building permits for Wind Energy Conversion Systems by imposing a new requirement that none of the three required county agreements (the Economic Development Agreement, Road Use Agreement, and Decommissioning Agreement) be more than two years old at the time of the application for a building permit.  Because these three agreements between the County and Sugar Creek were executed in 2013, Ordinance 2018-26 if retroactively enforced would prevent the use of the agreements to obtain a building permit, such that the terms, provisions, and intent of the Economic Development Agreement cannot be carried out.  The County also breached the contract by adopting Resolution 2019-05, which removes the designation of the Project Development Area as an Economic Revitalization Area, which would result in severe financial

- 17 -

consequences for the Project and prevent the parties from carrying out the terms, provisions, and intent of the Economic Development Agreement. The County further breached the contract by adopting Ordinances 2019-14 and 2019-16, which severely restrict Sugar Creek's ability to construct wind energy conversion systems, and impose burdensome, time-consuming, and expensive requirements for obtaining necessary construction approvals, such that the terms, provisions, and intent of the Economic Development Agreement cannot be executed. And, if the County seeks to enforce Ordinance 2019-13's more onerous decommissioning financial assurance requirements against Sugar Creek, this too will breach contractual obligations.

54.      Sugar Creek is entitled to declaratory relief that enforcement of these new Ordinances and Resolution 2019-05 against Sugar Creek and the Project would be a breach of the County's contractual obligations and violate Indiana law, and that these provisions therefore are not enforceable against Sugar Creek and the Project.

55.      Failure to complete the Project will result in damage that cannot be adequately calculated to compensate Sugar Creek, including unknown lost profits and reputational harm; accordingly Sugar Creek is entitled to specific performance directing the County to comply with the obligations under the Economic Development Agreement and refrain from enforcement of these Ordinances and Resolution 2019-05 against Sugar Creek.

56.      While Sugar Creek's injuries cannot be compensated fully by damages, Sugar Creek is entitled to recover damages caused by the County's actions in an amount to be ascertained at trial.

### SECOND CAUSE OF ACTION
### (Vested Rights Doctrine – Against All Defendants)

57.      Plaintiff incorporates and realleges the allegations in paragraphs 1 through 56 above.

58.     The application of Ordinance 2018-26 and Resolution 2019-05 to Sugar Creek is barred under Indiana's Vested Rights Doctrine.

59.     "[T]he term 'vested rights' . . . generally stand[s] for the proposition that a person's 'vested rights' are protected against retroactive application of a change in law." *Metro. Dev. Comm 'n of Marion Cnty. v. Pinnacle Media, LLC*, 836 N.E.2d 422, 425 (Ind. 2005), *on reh'g*, 846 N.E.2d 654 (Ind. 2006).

60.     The Indiana Supreme Court has adopted the general proposition that a "vested right" is acquired such that a new ordinance does not apply retroactively when the developer "'(1) relying in good faith, (2) upon some act or omission of the government, (3) . . . has made substantial changes or otherwise committed himself to his substantial disadvantage prior to a [regulatory] change." *Id*. at 425-26.

61.     In 2013, Sugar Creek and the County entered into the Economic Development Agreement to facilitate the development of the Project.  Relying in good faith on the Agreement, and on existing law and regulations, Sugar Creek spent millions of dollars to pursue development of the Project.  In addition to these significant expenditures, Sugar Creek has invested time and resources on negotiating and executing turbine supply agreements, operation and maintenance contracts, a balance of plant agreement, and financing arrangements.  Sugar Creek has thus acquired vested rights in the contemplated development of the Project under Indiana Law.

62.     Thereafter, in September 2018, the County reneged on its obligations under the Economic Development Agreement by adopting Ordinance 2018-26, which changed requirements associated with obtaining a building permit.  Specifically, Ordinance 2018-26 imposed a new requirement that none of the three county-level agreements required to obtain a building permit — the Economic Development Agreement, Road Use Agreement, and

Decommissioning Agreement — be more than two years old at the time of permit application. Sugar Creek's Economic Development Agreement, Road Use Agreement, and Decommissioning Agreement with the County were executed in 2013.  If this Ordinance is applied retroactively to the Project,  while Sugar Creek was entitled under prior law to obtain a building permit based on these Agreements, Sugar Creek will not be able to do so.  The County's new-found hostility to the Project, embodied in the Ordinance and Resolution and in its other obstructive behavior, make completion of the Project impossible despite the County's promise to use its best efforts to facilitate construction of the Project.

63.     The County further reneged on its obligations under the Economic Development Agreement by adopting Resolution 2019-05, which purports to rescind the Economic Revitalization Area designation that the City Council issued on September 3, 2012 under Resolution 2013-09, which designated the Project's Development Area as an Economic Revitalization Area and thus provided a path toward tax abatement.  If this Resolution is applied retroactively to the Project, Sugar Creek will lose the tax abatement that it negotiated and relied on in (a) entering the Economic Development Agreement and (b) spending millions of dollars advancing the Project.

64.     Ordinances 2019-14 and 2019-16 severely restrict Sugar Creek's ability to construct wind energy conversion systems, and impose burdensome, time-consuming, and expensive requirements for obtaining necessary construction approvals.  These limitations and requirements are far more onerous than those Sugar Creek agreed to in entering into the Agreements and incurring costs in connection with the Project.

65.     Further, application of Ordinance 2019-13 and its revisions to Montgomery County Code Section 155.15(F) would similarly impose more onerous requirements for

decommissioning financial assurance than Sugar Creek negotiated and relied upon in entering into the Agreements and in spending millions of dollars in hard and soft costs pursuing the Project.

66.     Ordinance 2018-06, Resolution 2019-05, and Ordinances 2019-14 and 2019-16 violate Sugar Creek's vested rights, and Ordinance 2019-13 will do likewise if applied to Sugar Creek.  These new enactments should be declared inapplicable to Sugar Creek and the Project.

67.     As a direct and proximate cause of the County's adoption of  these Ordinances and Resolution 2019-05, Sugar Creek has suffered and will continue to suffer significant, substantial and irreparable harm.

68.     Sugar Creek is entitled to declaratory relief that enforcement of  these Ordinances and Resolution 2019-05 would violate Indiana law and injunctive relief prohibiting the County from enforcing the Ordinances and Resolution 2019-05 against Sugar Creek and the Project.

69.     While Sugar Creek's injuries cannot be compensated fully by damages,  Sugar Creek  is entitled to recover damages caused by the County's actions in an amount to be ascertained at trial.

### THIRD CAUSE OF ACTION
### (Violation of the Contracts Clause - Article I, Section 10, Clause 1 of the United States Constitution – Against All Defendants)

70.     Sugar Creek incorporates and realleges the allegations in paragraphs 1 through 69 above.

71.     Article I, Section 10, clause 1 of the United States Constitution provides that no State shall pass a law impairing the obligation of contracts.

72.     A state law impairs the obligations of contracts when the state law operates as a substantial impairment of an existing contractual relationship, and the impairment is not reasonable and necessary.

- 21 -

73.     An impairment of a public contract is substantial if it deprives a private party of an important right, thwarts performance of an essential term, defeats the expectations of the parties, or alters a financial term.

74.     Sugar Creek has agreements with the County — an Economic Development Agreement, Road Use Agreement, and Decommissioning Agreement — to facilitate the development of a wind-powered electric generation facility in the County.

75.     Ordinance 2018-06, Resolution 2019-05, and Ordinances 2019-14 and 2019-16 impair Sugar Creek's rights and obligations as they existed when the Agreements were made, and Ordinance 2019-13 will do likewise if applied to Sugar Creek.

76.     Specifically, Ordinance 2018-06 thwarts performance of an essential term, defeats the expectations of the parties, and deprives Sugar Creek of an important right by making it impossible for Sugar Creek to obtain a building permit required to proceed with the Project under its Agreements with the County, as the Agreements are more than two years old.

77.     Further, Resolution 2019-05 defeats the expectations of the parties, deprives Sugar Creek of an important right, and alters a financial term by de-designating the Development Area as an Economic Revitalization Area.  If applied retroactively to the Project, Sugar Creek will lose the tax abatement that it negotiated and relied on in (a) entering the Economic Development Agreement and (b) thereafter spending Millions of Dollars advancing the Project.

78.     Ordinances 2019-14 and 2019-16 also thwart performance of essential terms and defeat the expectations of the parties by severely restricting Sugar Creek's ability to construct wind energy conversion systems, and imposing burdensome, time-consuming, and expensive requirements for obtaining necessary construction approvals.

79.     Application of Ordinance 2019-13 to Sugar Creek will likewise deprive Sugar Creek of an important right, altering financial terms governing decommissioning financial assurance.  If applied retroactively, the Ordinance will deprive Sugar Creek the benefit of key terms it relied on in entering into the Agreements and spending millions of dollars in developing the Project.

80.     These substantial impairments of the existing contractual relationship between Sugar Creek and the County are neither reasonable nor necessary.  Ordinance 2018-06 was purportedly passed to protect the citizens of Montgomery County" because "material terms and conditions of these agreements may change over time" and "the passage of time, changing economic conditions, new economic development…and other changes may make the terms and conditions unreasonable."  However, "the material terms and conditions" of the Economic Development Agreement have not changed; all that has changed is the County's political stance on the Project.

81.     As a direct and proximate cause of the County's adoption of  the Ordinances and Resolution 2019-05, Sugar Creek has suffered and will continue to suffer significant, substantial and irreparable harm.

82.     Sugar Creek is entitled to declaratory relief that enforcement of  the Ordinances and Resolution 2019-05 to the Project would violate the Contracts Clause of the United States Constitution and injunctive relief prohibiting the County from enforcing  the Ordinances and Resolution 2019-05 against Sugar Creek and the Project.

83.     While Sugar Creek's injuries cannot be compensated fully by damages, Sugar Creek is entitled to recover damages caused by the County's actions in an amount to be ascertained at trial.

**FOURTH CAUSE OF ACTION**
**(Violation of the Contracts Clause - Article 1, Section 24 of the Indiana Constitution –**
**Against All Defendants)**

84.     Sugar Creek incorporates and realleges the allegations in paragraphs 1 through 83 above.

85.     Article 1, Section 24 of the Indiana Constitution provides that no law impairing the obligation of contracts shall ever be passed.  A party to a contract may have a statute declared void if it impairs his contractual rights to his prejudice.

86.     Ordinance 2018-06 impairs Sugar Creek's contractual rights to its prejudice by making it impossible for Sugar Creek to obtain a building permit under its current agreements with the County, as they are more than two years old, thereby defeating their purpose and vitiating the Agreements.

87.     Resolution 2019-05 also impairs Sugar Creek's contractual rights to its prejudice by de-designating the Development Area as an Economic Revitalization Area.  If applied retroactively to the Project, Sugar Creek will lose the tax abatement that it negotiated and relied on in (a) entering the Economic Development Agreement and (b) thereafter spending millions of dollars advancing the Project.

88.     Ordinances 2019-14 and 2019-16 further impair Sugar Creek's contractual rights to its prejudice by severely restricting Sugar Creek's ability to construct wind energy conversion systems, and imposing burdensome, time-consuming, and expensive requirements for obtaining necessary construction approvals.

89.     Application of Ordinance 2019-13 and its revisions to Montgomery County Code Section 155.15(F) would similarly impair Sugar Creek's contractual rights to its prejudice by imposing more onerous requirements for decommissioning financial assurance than Sugar Creek

negotiated and relied upon in entering into the Agreements and in spending millions of dollars in hard and soft costs pursuing the Project.

90.     These substantial impairments of the existing contractual relationship between Sugar Creek and the County are neither reasonable nor necessary.  Ordinance 2018-06 was purportedly passed to protect the citizens of Montgomery County" because "material terms and conditions of these agreements may change over time" and "the passage of time, changing economic conditions, new economic development . . . and other changes may make the terms and conditions unreasonable."  However, "the material terms and conditions" of the Economic Development Agreement have not changed; all that has changed is the County's political stance on the Project.

91.     As a direct and proximate cause of the County's adoption of the Ordinances and Resolution 2019-05, Sugar Creek has suffered and will continue to suffer significant, substantial and irreparable harm.

92.     Sugar Creek is entitled to declaratory relief that enforcement of the Ordinances and Resolution 2019-05 against Sugar Creek would violate the Contracts Clause of the Indiana State Constitution and injunctive relief prohibiting the County from enforcing Ordinance 2018-06 and Resolution 2019-05 against Sugar Creek and the Project.

93.     While Sugar Creek's injuries cannot be compensated fully by damages, Sugar Creek is entitled to recover damages caused by the County's actions in an amount to be ascertained at trial.

**FIFTH CAUSE OF ACTION**
**(Violation of the Takings Clause – Fifth Amendment**
**United States Constitution – Against All Defendants)**

94.     Sugar Creek incorporates and realleges the allegations in paragraphs 1 through 93 above.

95.     The Takings Clause of the Fifth Amendment of the United States Constitution provides that no private property shall be taken for public use, without just compensation.

96.     If applied to the Project, Ordinance 2018-26, Resolution 2013-09, and Ordinances 2019-14 and 2019-16 constitute a taking given their economic impact on Sugar Creek and interference with Sugar Creek's investment-backed expectations.

97.     By adopting Ordinance 2018-26, which made it impossible for Sugar Creek to obtain a building permit for the Project and continue the Project, by adopting Resolution 2019-05, which purported to rescind the Economic Revitalization Area designation that was previously established for the Development Area, and by adopting Ordinances 2019-14 and 2019-16, which severely restrict construction and impose onerous application requirements for such construction, the County has significantly economically impacted Sugar Creek to its detriment.  Indeed, Sugar Creek has incurred hard costs of over $3 million on the Project, and soft costs in a similar amount, an investment that will be lost in its entirety if these regulations remain in place.

98.     Application of Ordinance 2019-13 and its revisions to Montgomery County Code Section 155.15(F) would similarly have an adverse economic impact on Sugar Creek and interfere with its investment-backed expectations by imposing more onerous requirements for decommissioning financial assurance than Sugar Creek negotiated and relied upon in entering into the Agreements and in spending millions of dollars in hard and soft costs pursuing the Project.

99.     Moreover, the Ordinances and Resolution 2013-09 were passed for no discernible reason other than to quash the Project, which constitutes a physical invasion targeted at Sugar Creek.

100.    The County has not compensated Sugar Creek for this unlawful taking.  In the event the County's application of the Ordinances and Resolution 2013-09 are not enjoined, Sugar Creek will be entitled to an award of just compensation in an amount to be ascertained at trial.

### SIXTH CAUSE OF ACTION
#### (Violation of the Takings Clause – Article I, Section 21, Indiana Constitution – Against All Defendants)

101.    Sugar Creek incorporates and realleges the allegations in paragraphs 1 through 100 above.

102.    The Indiana Constitution provides that no person's property shall be taken by law without just compensation.

103.    If applied to the Project,  the Ordinances and Resolution 2018-05 constitute a taking given their economic impact on Sugar Creek and interference with Sugar Creek's investment-backed expectations.

104.    By adopting Ordinance 2018-26, which made it impossible for Sugar Creek to obtain a building permit for the Project and continue the Project, and by adopting Resolution 2019-05, which purported to rescind the Economic Revitalization Area designation that was previously established for the Development Area, and by adopting Ordinances 2019-14 and 2019-16, which severely restrict construction and impose onerous application requirements for such construction, the County has significantly economically impacted Sugar Creek to its detriment.   Indeed, Sugar Creek has incurred hard costs of over $3 million on the Project, and soft costs in a similar amount, an investment that will be lost in its entirety if these regulations remain in place.

105.    Application of Ordinance 2019-13 and its revisions to Montgomery County Code Section 155.15(F) would similarly have an adverse economic impact on Sugar Creek and interfere with its investment-backed expectations by imposing more onerous requirements for

decommissioning financial assurance than Sugar Creek negotiated and relied upon in entering

into the Agreements and in spending millions of dollars in hard and soft costs pursuing the

Project.

106.    Moreover, the Ordinances and Resolution 2019-05 were passed for no discernible

reason other than to quash the Project, which constitutes a physical invasion targeted at Sugar

Creek.

107.    The County has not compensated Sugar Creek for this unlawful taking.  In the

event the County's application of the Ordinances and Resolution 2019-05 are not enjoined, Sugar

Creek will be entitled to an award of just compensation in  an amount to be ascertained at trial.

**SEVENTH CAUSE OF ACTION**
**(Due Process Under United States Constitution**
**Amend 14, § 1 – Against All Defendants)**

108.    Sugar Creek incorporates and realleges the allegations in paragraphs 1 through

107 above.

109.    Sugar Creek challenges  the Ordinances and Resolution 2019-05 under the

Procedural Due Process Clause of the U.S. Constitution.

110.    The U.S. Constitution provides that no state shall "deprive any person of life,

liberty or property without due process of law."

111.    The County's procedures in adopting the Ordinances and Resolution 2019-05 did

not comport with due process.  The fundamental requirement of procedural due process is the

opportunity to be heard at a meaningful time and in a meaningful manner.  Sugar Creek was not

given an adequate or meaningful hearing or opportunity to be heard at the time the County

considered the Ordinances and Resolution 2019-05.  Sugar Creek also has not been given an

adequate post-deprivation opportunity to be heard after adoption of the Ordinances and

Resolution.

112.    In addition, the retroactive aspects of the Ordinances and Resolution 2019-05 are neither rationally nor non-arbitrarily related to legislative goals. Although Ordinance 2018-06 was purportedly passed to "protect the citizens of Montgomery County because the material terms and conditions of the agreements may change over time and the passage of time, changing economic conditions, new development . . . and other changes may make the terms and conditions unreasonable," nothing has changed here other than the County's arbitrary desire to thwart the Project.

113.    The County purposefully singled out, targeted, and discriminated against Sugar Creek in enacting Ordinance 2018-26, given that no other wind-generated electricity projects have such Agreements that are over two years old.

114.    Resolution 2019-05 also directly targeted and discriminated against the Project because it purports to rescind the Economic Revitalization Area for the Development Area, with no discernible legitimate purpose, but merely a desire to quash the Project.

115.    Ordinances 2019-14 and 2019-16 also single out, target, and discriminate against Sugar Creek by imposing new and onerous zoning requirements for wind energy conversion systems.

116.    As a direct and proximate cause of the County's adoption of the Ordinances and Resolution 2019-05, Sugar Creek has suffered and will continue to suffer significant, substantial and irreparable harm.

117.    Sugar Creek is entitled to declaratory relief that enforcement of the Ordinances and Resolution 2019-05 would violate the Due Process Clause of the Indiana State Constitution and injunctive relief prohibiting the County from enforcing the Ordinances and Resolution 2019-05 against Sugar Creek and the Project.

118.     While Sugar Creek's injuries cannot be compensated fully by damages, Sugar

Creek is  entitled to recover damages caused by the County's actions in an amount to be

ascertained at trial.

**EIGHTH CAUSE OF ACTION**
**(Due Process Under Indiana Constitution. Art. 1, § 1. – Against All Defendants)**

119.     Sugar Creek incorporates and realleges the allegations in paragraphs 1 through

118 above.

120.     Sugar Creek challenges the Ordinances and Resolution 2019-05 under the

Procedural Due Process Clause of the Indiana Constitution.

121.     Article 1, Section 12 of the Indiana Constitution provides, in part, "every person,

for injury done to him in his person, property, or reputation, shall have remedy by due course of

law."

122.     The County's procedures in adopting the Ordinances and Resolution 2019-05 did

not comport with due process.  The fundamental requirement of procedural due process is the

opportunity to be heard at a meaningful time and in a meaningful manner.  Sugar Creek was not

given an adequate or meaningful hearing or opportunity to be heard at the time the County

considered  the Ordinances and Resolution 2019-05.  Sugar Creek also has not been given an

adequate post-deprivation opportunity to be heard after adoption of the Ordinances and

Resolution.

123.     In addition, the retroactive aspects of  the Ordinances and Resolution 2019-05 are

neither rationally nor non-arbitrarily related to legislative goals.  Although Ordinance 2018-26

was purportedly passed to "protect the citizens of Montgomery County because the material

terms and conditions of the agreements may change over time and the passage of time, changing

economic conditions, new development . . . and other changes may make the terms and

- 30 -

conditions unreasonable," nothing has changed here other than the County's arbitrary desire to thwart the Project.

124.    The County purposefully singled out, targeted, and discriminated against Sugar Creek in enacting Ordinance 2018-26, given that given that no other wind-generated electricity projects have such Agreements that are over two years old.

125.    Resolution 2019-05 also directly targeted and discriminated against the Project because it purports to rescind the Economic Revitalization Area for the Development Area, with no discernible legitimate purpose, but merely a desire to quash the Project.

126.    Ordinances 2019-14 and 2019-16 also single out, target, and discriminate against Sugar Creek by imposing new and onerous zoning requirements for wind energy conversion systems.

127.    As a direct and proximate cause of the County's adoption of the Ordinances and Resolution 2019-05, Sugar Creek has suffered and will continue to suffer significant, substantial and irreparable harm.

128.    Sugar Creek is entitled to declaratory relief that enforcement of the Ordinances and Resolution 2019-05 would violate the Due Process Clause of the Indiana State Constitution and injunctive relief prohibiting the County from enforcing the Ordinances and Resolution 2019-05 against Sugar Creek and the Project.

129.    While Sugar Creek's injuries cannot be compensated fully by damages, in the event injunctive relief is not granted, Sugar Creek is entitled to recover damages caused by the County's actions in an amount to be ascertained at trial.

**NINTH CAUSE OF ACTION**
**(Declaratory Relief – Against All Defendants)**

130.    Sugar Creek incorporates and realleges the allegations in paragraphs 1 through 129 above.

131.    Sugar Creek seeks a declaratory judgment pursuant to the Uniform Declaratory Judgment Act that Ordinance 2018-26, Ordinance 2019-05, Ordinance 2019-14, Ordinance 2019-16, and Resolution 2019–05 are:

(i)     Invalid and unenforceable against Sugar Creek under Indiana's Vested Rights doctrine;

(ii)    A breach of the Agreements between the County and Sugar Creek;

(iii)   Invalid and unenforceable against Sugar Creek under the Contracts Clauses of the United States Constitution, Article I, Section 10, and the Indiana Constitution, Article 1, Section 24;

(iv)    Effect an uncompensated taking from Sugar Creek barred by the Takings Clauses of the United States Constitution, Fifth Amendment, and the Indiana Constitution, Article I, Section 21; and

(v)     Invalid and unenforceable against Sugar Creek under the Due Process Clauses of the United States Constitution, Amend. 14, Section 1, and the Indiana Constitution, Art.1, Section 1.

WHEREFORE, Plaintiff Sugar Creek REQUESTS RELIEF as follows:

1.    Injunctive relief prohibiting the County from enforcing the Ordinances and Resolution 2019-05 as against Sugar Creek and the Project;

2.    A declaration pursuant to the Uniform Declaratory Judgment Act are that the Ordinances and Resolution 2013–09:

    (i)      Invalid and unenforceable against Sugar Creek under Indiana's Vested Rights doctrine;

    (ii)     A breach of the Agreements between the County and Sugar Creek;

    (iii)    Invalid and unenforceable against Sugar Creek under the Contracts Clause of the United States Constitution, Article I, Section 10, and the Indiana Constitution, Article 1, Section 24;

    (iv)    Effect an uncompensated taking from Sugar Creek barred by the Takings Clauses of the United States Constitution, Fifth Amendment, and the Indiana Constitution, Article I, Section 21; and

    (v)     Invalid and unenforceable against Sugar Creek under the Due Process Clauses of the United States Constitution, Amend. 14, Section 1, and the Indiana Constitution, Art.1, Section 1.

3.     A decree in specific performance directing that the County comply with its obligations under the Agreements between the County and Sugar Creek, and refrain from enforcing the Ordinances and Resolution 2019-05 against Sugar Creek;

4.     An award of compensatory damages with prejudgment interest as allowed by law;

5.     Attorneys' fees and an award of costs;

6.     Awarding such other and further relief to which Sugar Creek is entitled in the discretion of the Court.

Dated: December 3, 2019                     Respectfully submitted,


                                            *Offer Korin*
                                            Offer Korin, Attorney No. 14014-49
                                            KATZ KORIN CUNNINGHAM, PC
                                            334 North Senate Avenue
                                            Indianapolis, Indiana  46204-1708
                                            317-464-1100; 317-464-1111-Fax
                                            okorin@kkclegal.com

                                            Thomas J. Hall, *PHV Motion to-be Filed*
                                            NORTON ROSE FULBRIGHT US LLP
                                            1301 Avenue of the Americas
                                            New York, New York 10019-6022
                                            212-408-5487; 646-710-5487- Fax
                                            thomas.hall@nortonrosefulbright.com

                                            Robin Ball Partner, *PHV Motion to-be Filed*
                                            NORTON ROSE FULBRIGHT US LLP
                                            555 South Flower Street, Forty-First Floor
                                            Los Angeles, CA  90071
                                            213-892-9366; 213-892-9494 - Fax
                                            robin.ball@nortonrosefulbright.com

                                            *Attorneys for Plaintiff Sugar Creek Wind, LLC*